**Donna J. PECK, Plaintiff,**

v.

**HUDSON CITY SCHOOL DISTRICT, HUDSON, NEW YORK; John Walsh, as aider and abettor; and Dwight Sickler, as aider and abettor, Defendants.**

**No. 97–CV–1010 LEK/RWS.**

United States District Court, N.D. New York.

May 18, 2000.

Dennis B. Schlenker, Feit, Schlenker Law Firm, Albany, NY, for Donna J. Peck.

Jason L. Shaw, Rapport, Meyers Law Firm, Hudson, NY, for Hudson city School Dist.

## *MEMORANDUM—DECISION AND ORDER*

KAHN, District Judge.

Presently before the Court is defendant Hudson City School District's ("HCSD") motion in limine. For the reasons set forth below, that motion is denied-in-part and granted-in-part, and the Court reserves on the issue of Dr. Gilly's testimony.

## I. BACKGROUND

Defendant HCSD, a central school district located in Columbia County, New York, employed Plaintiff between 1994 and 1996 on its custodial staff. Plaintiff commenced the instant action alleging that defendant John Walsh, a maintenance worker, sexually harassed her, thereby creating a hostile work environment in violation of Title VII of the 1964 Civil Rights Act ("Title VII"). She also alleges quid pro quo harassment.

## II. ANALYSIS

HCSD has moved in limine to preclude Plaintiff from (i) offering evidence of sexual harassment occurring prior to December 1, 1995, which was 300 days before she filed her administrative charge with the New York State Division of Human Rights ("DHR"); (ii) eliciting testimony from buildings and grounds supervisor Dwight Sickler that he sexually harassed an employee a year after Plaintiff's retaliation claim; (iii) eliciting testimony from medical witnesses about any treatment for which Plaintiff has failed to timely disclose or provide updated medical records; (iv) testifying as to statements made by District employees; (v) introducing evidence as to defendant Walsh's meeting with a student; (vi) introducing evidence regarding defendant Walsh's retirement; and (vii) introducing any evidence of defendant HSCD's change in its policy on sexual harassment.

### A. Harassment Prior to December 1, 1995

■ Plaintiff filed her DHR complaint on September 26, 1996. Only events that occurred 300 days prior to that date— December 1, 1995—are actionable under Title VII. *See* 42 U.S.C. § 2000e–5(e). Plaintiff attempts to elude the 300–day restriction by arguing that events prior to December 1, 1995 were part of a "continuing violation" exception to the 300–day rule.

The continuing violation exception applies when there is evidence of an ongoing discriminatory policy or practice, such as use of discriminatory seniority lists or employment tests. Although discrete incidents of discrimination that are not the result of a discriminatory policy or practice will not ordinarily amount to a continuing violation, *see Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994); *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir. 1993), *cert. denied,* 511 U.S. 1052, 114 S.Ct.

1612, 128 L.Ed.2d 339 (1994), "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice," a continuing violation may be found. *Cornwell*, 23 F.3d at 704. If a continuing violation is shown, a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred. *See Lambert*, 10 F.3d at 53.

HCSD relies primarily on *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir.1996), where the Second Circuit held that evidence prior to the 300 days should be excluded absent proof that an employer allowed related incidents of discrimination to go unremedied long enough to amount to a *de facto* policy. HCSD contends that it immediately reprimanded defendant Walsh when a teacher complained of his unwelcomed advances, and that Plaintiff's complaints met with no response because they were merely to low level supervisors who lacked the authority to discipline her harasser, thereby preventing imputation of the knowledge to the HCSD and formation of a continuing violation.

Defendant HCSD maintains that Plaintiff's complaints to such low-level personnel never placed it on notice. It is well-established that for the knowledge of a supervisor to be imputed to the employer that the supervisor must be "at a sufficiently high level in the hierarchy" of the employer. *Karibian v. Columbia Univ.*, 14 F.3d 773, 780 (2d Cir.), *cert. denied*, 512 U.S. 1213, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994) (knowledge of "low-level supervisor" not imputed to employer). I rejected this exact argument in Defendants' summary judgment motion in my decision dated November 18, 1999, and concluded that the personnel to whom Plaintiff lodged her complaint were sufficiently high placed as supervisors to place defendant HCSD on notice. Defendants have offered no new grounds justifying reconsideration of that ruling.

## B. Defendant Sickler's Statement

■ Defendant Sickler's secretary filed a complaint to the HCSD in July 1997 concerning, *inter alia*, his requests that she accompany him on a trip or to lunch. No charges were filed against Sickler, but he did subsequently resign. Defendant HCSD argues that introduction of this evidence would merely be aimed at demonstrating a character trait of Sicker in violation of Fed.R.Evid. 404. Defendant contends that such evidence would be immaterial to the retaliation claim, but omits any similar explanation with respect to the hostile work environment claim for the obvious reason that such evidence *is* material.

Rule 403 allows the trial court to exclude relevant evidence on the ground of prejudice to the party against whom it is offered "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. As the terms of the Rule indicate, for relevant evidence to be excluded on this basis, the imbalance must be substantial, and the prejudice must be unfair. "The prejudice that Rule 403 is concerned with involves some adverse effect ... beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir.1995) (internal quotation marks omitted). Evidence of the harassment of women other than Plaintiff, if part of a pervasive or continuing pattern of conduct, would surely be relevant to show the existence of a hostile environment at the HCSD and could be found probative of the HCSD's notice of that environment within period relevant in the case *sub judice*. Any concern relating to the jury focusing on punishing Sickler as a "bad person," as Defendant suggests, can be dealt with in the jury charge.

## C. Testimony from Medical Witnesses

The Court is deeply troubled by Plaintiff's failure to disclose treatment by Dr.

Phillip Gilly until April 7, 2000—little more than a month before trial—despite three demands for medical records pursuant to Fed.R.Civ.P. 34. The critical issue is precisely what Dr. Gilly would testify about if called at trial.

■ The plain language Fed.R.Civ.P. 26(a)(2) only requires a written report for a witness retained or specially employed to provide expert testimony in the case, or whose duties as a party's employee regularly involve the giving of expert testimony. As explained in the Advisory Committee Notes, this language excludes treating physicians: "treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report." Fed.R.Civ.P. 26(a)(2), Advisory Committee's Notes, 1993 amendment. Thus, to the extent that a treating physician testifies only to the care and treatment of the patient, the physician is not considered to be a "specially employed" expert and is not subject to the written report requirements of Rule 26(a)(2)(B), "notwithstanding that the witness may offer opinion testimony under [the Federal Rules of Evidence]." *Wreath v. United States,* 161 F.R.D. 448, 450 (D.Kan.1995). However, when the doctor's opinion testimony extends beyond the facts disclosed during care and treatment of the patient and the doctor is specifically retained to develop opinion testimony, he or she is subject to the provisions of Rule 26(a)(2)(B).

If Dr. Gilly is testifying solely about Plaintiff's treatment and care, then Plaintiff had no obligation under Fed.R.Civ.P. 26(e) to supplement its responses to Defendants' discovery demands, as defendant HCSD contends. The demand for medical records pursuant to Rule 34 is clearly limited in Rule 34(a) to "things which constitute or contain matters within the scope of Rule 26(b)." Since Plaintiff's counsel offers no explanation whatsoever for the nature of Dr. Gilly's testimony, the Court must reserve.

**D. Statements Made by HCSD Employees**

Under Fed.R.Evid. 801(d)(2), Plaintiff may not testify as to statements made by Nabozny, June, or Benton unless she first establishes that such statements were within the scope of their authority. Absent such a finding, permitting Plaintiff to repeat those statements from the witness stand would constitute hearsay.

**E. Defendant Walsh's Meeting with Ms. Johnson**

■ Defendant Walsh apparently had a friendly relationship with a student, Jill Johnson, that he attempted to expand upon. HCSD contends that evidence of the relationship should be excluded since Johnson never reported Walsh's approaches to her that took place outside of school. Walsh's on-campus activity, however, was sufficiently egregious that the school superintendent placed a note in his personnel file stating that Walsh's job would be in jeopardy if such contacts continued. As explained above, see infra II.B, such evidence would clearly be material to Plaintiff's hostile work environment claim. The Court is astounded at the distinction that HCSD attempts to draw in pointing out that the possible harassment of Johnson took place during the day while classes were in session while Plaintiff worked the night shift. Day or night, a wrong is a wrong, and clearly goes to the existence of a pattern of harassment in violation of Title VII.

For that reason, the fact that such conduct occurred outside the 300–day period is irrelevant. Even if evidence of this type is barred under the statute of limitations, it may be admissible as relevant to the issues. *See, e.g., Hennessy v. Penril Datacomm Networks, Inc.,* 69 F.3d 1344, 1349 (7th Cir.1995) (acts occurring outside 300–day limitations period admissible for background purposes); *Wilson v. Chrysler Motors Corp.,* No. 95 C 50336, 1998 WL 83098, at *4 (N.D.Ill. Feb.25, 1998) (Reinhard, J.) (same); *Van Jelgerhuis v. Mercu-*

*ry Finance Co.,* 940 F.Supp. 1344, 1355 n. 1 (S.D.Ind.1996) (time-barred events affect relief potentially available to plaintiff, but may still be relevant in determining whether a hostile work environment existed); *Proffit v. Keycom Elec. Publ'g,* 625 F.Supp. 400, 408 (N.D.Ill.1985) (alleged discriminatory acts could not be used to establish liability, but could be relevant as background).

### F. Defendant Walsh's Resignation

■ Rather than terminate Walsh or commence disciplinary proceedings, the HCSD permitted him to resign after Plaintiff reported her sexual harassment claim. The circumstances surrounding the termination of Walsh's employment could be probative of the HCSD's alleged hostile work environment since a jury could infer that Plaintiff's employer engaged in a pattern of protecting harassers from termination once a complaint was filed. In short, the need for a jury to weigh the totality of the circumstances in a hostile environment claim directly relates to the circumstances surrounding Walsh's termination.

### G. Policy Change

■ Defendant HCSD seeks to prevent introduction of evidence relating to a change in sexual harassment policy implemented subsequent to Plaintiff's complaint. Fed.R.Evid. 407 provides that when "measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction." Accordingly, Plaintiff may not introduce evidence that defendant HCSD changed its policy to expand notification given to employees regarding their rights in the event of sexual harassment.

### III. CONCLUSION

Accordingly, it is hereby

ORDERED that defendant Hudson City School District's motions in limine (i) to prevent Plaintiff from introducing evidence of sexual harassment prior to December 1, 1995 is DENIED; (ii) to bar introduction of defendant Sickler's statement regarding harassment of an employee subsequent to Plaintiff's retaliation claim is DENIED; (iii) to prevent Plaintiff from testifying as to statements by Nabozny, June and Benton, unless such statements are found to be within the scope of the employees' authority, is GRANTED; (iv) to prevent introduction of evidence related to defendant Walsh's meeting with Ms. Johnson is DENIED; (v) to prevent introduction of evidence concerning defendant Walsh's resignation is DENIED; and (vi) precluding any evidence of defendant HCSD's change in policy on sexual harassment is GRANTED;

ORDERED that the Court RESERVES decision on the motion in limine to bar Dr. Gilly's testimony until Plaintiff provides an explanation as to the nature of the proposed testimony; and it is

FURTHER ORDERED that the Clerk of the Court serve a copy of this Order on all parties by regular mail.

IT IS SO ORDERED.