**Andrew ORDON, Plaintiff,**

v.

**Karen KARPIE, et al., Defendants.**

**No. CIV. 3:01cv1951(AHN).**

United States District Court,
D. Connecticut.

March 26, 2004.

Philip M. French, Stamford, CT, for Plaintiff.

Kevin Michael Godbout, Michael D. Neubert, Neubert, Pepe & Monteith, New Haven, CT, for Defendants.

## RULING ON DISCOVERY MOTIONS

FITZSIMMONS, United States
Magistrate Judge.

On February 19, 2004, the court heard oral argument on seven discovery motions pending before the court: defendants' motions to preclude expert testimony or compel compliance [docs. ## 53,55,57,59,61]; defendants' motion to compel [doc. # 63]; and plaintiff's motion to compel [doc. # 69]. After considering the arguments presented at oral argument and in counsel's memoranda, the court orders the following.

*Defendants' motions to preclude or compel [docs. ## 53,55,57,59,61]*

Defendants move to preclude the testimony of five of plaintiff's witnesses: Dr. Andrew Ordon (the plaintiff) [doc. # 53], Dr. Roy Winston [doc. # 55], Dr. Paula Moynahan [doc # 57], Mr. Robert Lucas, PA–C, [doc. # 59], and Dr. Renato Calabria [doc. # 61], based upon alleged deficiencies in plaintiff's expert disclosures for these witnesses. In the alternative, defendants seek an order that plaintiff provide supplemental reports containing the omitted information by a date certain, and request additional time to depose the experts.

■ Federal Rule of Civil Procedure 26(a)(2)(B) requires a written report to accompany disclosure "with respect to a witness who is retained or specially employed to provide expert testimony. . . ." Fed.R.Civ.P. 26(a)(2)(B). The report shall contain:

a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as

an expert at trial or by deposition within the preceding four years. *Id.*

The basis and opinions requirement means "'how' and 'why' the expert reached the conclusions and opinions to be expressed." *Reed v. Binder,* 165 F.R.D. 424, 429 (D.N.J. 1996). The data and information refers to "'what' the expert saw, heard, considered, read, thought about or relied upon in reaching the conclusions and opinions to be expressed." *Id.*

*Dr. Ordon*

■ Dr. Ordon, the plaintiff, is designated to offer expert testimony on the following topics: 1) that his treatment of Keith Balentine complied with all standards of care; 2) that the Connecticut consent decree and related proceedings caused plaintiff to suffer emotional distress including depression; 3) that drugs taken to treat plaintiff's emotional distress resulting from the consent decree caused plaintiff's peripheral neuropathies, including carpal tunnel syndrome; and 4) that he is unable to pursue his profession as a result. [Defs.' Mot. (doc. # 53) at Ex. B.] The limited information provided in Dr. Ordon's report does not comply with the requirements of Rule 26. The report does not state the basis for his opinions in any detail. The "data and information considered" section is woefully vague. For example, the report generally cross-references deposition testimony, medical records and chronologies, exhibits, and "drug use and side effect information" without identifying any specific documents or texts. It refers to "discussions with other physicians," without a complete list of which physicians and the topic of the discussions.

■ Plaintiff argues that an expert report is not required for Dr. Ordon because he is the plaintiff and was not "specially retained" to testify. Although Dr. Ordon is a party to the lawsuit, the scope of his testimony includes expert opinion which, if elicited from another party, would be subject to Rule 26. The court has the discretion to impose a report requirement upon any individual who will offer expert testimony. *See* Advisory Committee Notes to 1993 Amendments to Rule 26, paragraph (2). The court finds no

reason to exempt Dr. Ordon from the requirement.

■ Plaintiff's representation that he will give only opinions about which he has already been deposed is not accurate. As the defendants point out, the issue of the alleged causal connection between the treatment of plaintiff's emotional distress and the development of carpal tunnel syndrome arose after the close of discovery, and plaintiff was never deposed on this topic. In any case, the fact that some of the information upon which Dr. Ordon relies in forming his opinion is identified in the deposition testimony does not relieve plaintiff from the obligation to provide a complete report in compliance with the Federal Rules. The court agrees with defendants that the proffered report does not offer a sufficient basis upon which the defendants may intelligently decide whether to depose the expert and otherwise prepare a defense. This limited disclosure does nothing to further the purposes of discovery. The purpose of requiring expert reports is to provide the opposing party with the scope of the opinion that will be provided at trial, to allow for an effective cross examination of the witness, and to limit the total number of depositions. Defendants' motion [doc. # 53] is **GRANTED** to the extent that it seeks a supplemental report and additional time to depose Dr. Ordon. A scheduling order appears at the end of this ruling.

### Dr. Winston

■ Dr. Winston is designated to testify to the following: 1) that the Connecticut consent decree and related proceedings caused plaintiff to suffer emotional distress including depression; 2) that drugs taken to treat plaintiff's emotional distress resulting from the consent decree caused plaintiff's peripheral neuropathies, including carpal tunnel syndrome; and 3) that he is unable to pursue his profession as a result. [Def.'s Mot. (doc, # 55) at Ex. B.] Dr. Winston's report is deficient in many of the same respects as Dr. Ordon's; in fact, the data and information sections reference the same unidentified medical records, testimony, exhibits "drug use and side effect information", and "discussions with physicians."

■ Plaintiff argues that Dr. Winston need not provide an expert report because he is a treating physician. Dr. Winston is disclosed as having treated plaintiff for depression, and apparently for tarsal tunnel syndrome. The Federal Rules do provide an exemption for treating physicians. However, the exemption does not apply in certain circumstances:

> To the extent that the treating physician testifies only as to the care and treatment of his/her patient, the physician is not to be considered a specially retained expert notwithstanding that the witness may offer opinion testimony under Fed.R.Evid. 702, 703 and 705. However, when the physician's proposed opinion testimony extends beyond the facts made known to him during the course of the care and treatment of the patient and the witness is specially retained to develop specific opinion testimony, he becomes subject to the provisions of Fed.R.Civ.P. 26(a)(2)(B).

*Wreath v. United States,* 161 F.R.D. 448, 450 (D.Kan.1995).

As evidenced by the limited information contained in the report already provided, the testimony that Dr. Winston will provide concerning the causal connection between the treatment for depression and peripheral neuropathies is based upon facts beyond the scope of those made known to him in the course of the care and treatment of the patient. The fact that Dr. Winston is not being compensated for his testimony also does not exempt him from the report requirement. Defendants' motion [doc # 53] is **GRANTED** to the extent that it seeks a supplemental report and additional time to depose Dr. Winston.

### Dr. Moynahan

■ Dr. Moynahan is designated to testify that Dr. Ordon's care and treatment of Keith Balentine complied with the standard of care for plastic surgeons. Dr. Moynahan's expert disclosure consists of a brief letter containing only this statement, and a resume. For the reasons discussed above, the court finds that the report does not comply with Rule 26. Defendants' motion [doc # 57] is **GRANTED** to the extent that it seeks an

supplemental report and additional time to depose Dr. Moynahan.

### Mr. Robert Lucas, Physician Assistant

Mr. Robert Lucas, PA–C, is also designated to testify that Dr. Ordon's treatment of Balentine met the standard of care. His report consists of a list of 11 categories of information upon which he is qualified to offer testimony, and a resume. It does not contain any further information about the bases of his opinion, nor the evidence or data upon which he relied in forming his opinion. For the reasons discussed above, defendants' motion [**doc # 59**] is **GRANTED** to the extent that it seeks a supplemental report and additional time to depose Mr. Lucas.

### Dr. Calabria

■ Dr. Calabria is designated to testify to the following: 1) that Dr. Ordon's treatment of Keith Balentine complied with all standards of care; 2) that a causal link exists between the consent order and plaintiff's emotional and physical problems, his financial losses, and his loss of reputation in the community; and 3) that Dr. Ordon has been impaired from performing his surgical practice as a result of the consent order. The report does not state the basis for the opinions, and does not identify specifically the data relied upon in forming this opinion. Plaintiff argues that a report is not required for reputation testimony. However, Dr. Calabria has been designated to opine about topics beyond Dr. Ordon's loss of reputation. An expert report that complies fully with the requirements of Rule 26 must therefore be provided to defendants for the reasons previously discussed. Defendants' motion [**doc # 61**] is **GRANTED** to the extent that is seeks an supplemental report and additional time to depose Dr. Calabria.

### Defendants' motion to compel [doc. # 63]

Defendants request an order compelling plaintiff to provide HIPAA-compliant authorizations enabling the defendants to obtain Dr. Ordon's medical records from all medical providers including, but not limited to, Dr. Douglas Rogers, Dr. Jay Roberts, Dr. William Kelly, and Dr. John Hammell. At oral argument, plaintiff's counsel indicated he believed signed releases already existed for these doctors. Defense counsel indicated he had not received any signed releases, and raised a concern over whether the original releases, dated July 1, 2003, might have expired. Plaintiff also agreed that Dr. Ordon was seen by doctors for carpal tunnel syndrome and tarsal tunnel syndrome in addition to the four identified above.

The court ordered plaintiff to identify any doctors who treated plaintiff for these conditions and any related neuropathies. The parties agreed that defense counsel would fill out and send a new set of HIPAA-compliant release forms to plaintiff's counsel via overnight mail and would provide overnight mailers for plaintiff's counsel to return the forms immediately to defense counsel once the forms were signed by plaintiff. In a letter to the court, dated March 4, 2004, defense counsel reported that, despite this agreement and the court's order, plaintiff had not yet identified the additional treating doctors, nor returned the signed forms. In a March 8, 2004 letter to the court, plaintiff's counsel, Attorney Philip French, responded by claiming that the blank authorization forms sent by defense counsel amounted to "new and unspecified discovery" after the close of fact discovery. This is absurd. It is obvious that these forms are intended for the doctors that the court ordered be identified at the February 19, 2004 hearing. The court **orders plaintiff's counsel to provide defense counsel with the signed authorization forms within five (5) days of the docketing of this ruling.** Attorney French is put on notice that a failure to comply with an order of the court in the future may result in sanctions. Attorney French is also reminded that if he is unclear about the meaning of an order of the court, he should seek clarification; if he has trouble remembering what he has agreed to in court, he should take notes.

Defendants also seek a complete copy, made in or around December 2002, of plaintiff's application to AmeriStar Insurance Company including all exhibits and attachments. To date, plaintiff has provided to defendants only a portion of the application. Defendants contend that the application must be produced because it was already the sub-

ject of a court order issued on August 29, 2002 [doc # 23]. That order, however, ordered plaintiff to produce applications for liability insurance for the past five (5) years, and did not include an order to produce any prospective or subsequent applications. Therefore, plaintiff's December 2002 application was not covered by that order. Plaintiff contends that he has already produced the portion of the application in his possession and that he does not have a complete copy of the application because it was filled out by an insurance broker, and he only saw the two pages that have already been disclosed. At oral argument, plaintiff provided the court with a copy of the fax cover sheet of the application for in camera review. The court has reviewed the document and agrees with plaintiff that he may not have viewed the rest of the application. Nevertheless, plaintiff's complete AmeriStar malpractice insurance application is relevant because it may contain information about the nature and extent of Dr. Ordon's carpal tunnel syndrome in December 2002, which is clearly an issue in this case. It may also be relevant for impeachment purposes. **The court orders plaintiff to produce a copy of the entire AmeriStar application, and to disclose the name and address of the insurance broker who completed the application within five (5) days of the docketing of this ruling. If plaintiff cannot produce the complete application, plaintiff may issue a subpoena *duces tecum* to AmeriStar. Defendants are granted leave to depose Dr. Ordon and the insurance broker on the AmeriStar application.**

Finally, defendants seek correspondence between Dr. Ordon and Dr. Henderson and between their lawyers regarding Dr. Ordon's separation from a practice with Dr. Henderson in California. At Dr. Ordon's deposition, defendant requested documentation regarding a lawsuit that was filed in connection with the separation. Plaintiff agreed to produce the documentation at his deposition provided it was relevant. At oral argument, plaintiff objected to the relevance of the information and, in the alternative, requested a clarification about the scope of the documents he must produce in response to the request. Dr. Ordon's relationship with Dr. Henderson, and the circumstances under which he departed from a practice of referrals with him, is relevant to his damages claim that he lost between $250,000 to $350,00 in income due to the loss of referrals. **The court orders plaintiff to provide a copy of the memo prepared by Dr. Ordon concerning a meeting with Dr. Henderson in January 2002, and the letter by Dr. Ordon's lawyer to Dr. Henderson's lawyer regarding Dr. Ordon's departure, within seven (7) days of the docketing of this ruling.**

*Plaintiff's counter motion for compliance [doc. # 69]*

Plaintiff seeks the negatives or large copies of the photos of Mr. Balentine. At oral argument, defendants agreed to provide plaintiff with copies of the photographs of Mr. Balentine, but opposed plaintiff's request for the negatives. In plaintiff's March 8, 2004 letter to the court, plaintiff suggested that he was unhappy with defendants' production of the photos because eight of the photos were not large enough to be useful. The parties are ordered to confer about how large the prints need be in order to be useful for plaintiff's purposes, and defendants shall produce a set in the designated size. If the parties are unable to agree, they should contact the court for further assistance in resolving any remaining dispute regarding the production of the photos.

The parties have been unable to agree on a confidentiality agreement regarding plaintiff's medical records, and request clarification about the scope of the court's April 3, 2003 order [doc # 35] regarding a proposed agreement. Defendants contend the agreement should cover medical records only, and plaintiff contends that it should cover additional documents that may contain medical information, to be identified by plaintiff. Defendants also argue that any agreement should not limit the use of the confidential information at trial, which was not addressed in either party's draft agreement. The court orders that the confidentiality agreement shall cover **plaintiff's medical records only,** which are those records generated by plaintiff's treating physicians in the ordinary course of their care and treatment of plain-

tiff. The agreement shall not limit the use of the records at trial. Plaintiff may propose appropriate protections for confidential documents introduced at trial. Defendants are ordered to submit a revised confidentiality agreement to plaintiff consistent with this order. The parties shall contact the court should additional issues with the confidentiality agreement arise.

*Scheduling order*

In light of this ruling, the court orders the following.

Plaintiff shall provide defendants with supplemental expert disclosures for Dr. Ordon, Dr. Winston, Mr. Lucas, Dr. Moynahan, and Dr. Calabria on or before Friday, April 9, 2004.

Should defendants wish to depose any of these experts, they shall make immediate arrangements once they have received the expert disclosures.

The discovery deadline is extended until Friday, April 30, 2004.

Plaintiff shall identify additional treating doctors and return HIPAA-complaint authorizations to defendants within five (5) days of the docketing of this ruling.

Plaintiff shall produce a copy of the entire AmeriStar application, and disclose the name and address of the insurance broker who completed the application within five (5) days of the docketing of this ruling. If plaintiff cannot produce the complete application, plaintiff may issue a subpoena *duces tecum* to AmeriStar. Defendants are granted leave to depose Dr. Ordon and the insurance broker about the AmeriStar application, at a deposition to be scheduled immediately upon plaintiff's disclosure of the insurance information.

Plaintiff shall provide the correspondence concerning the Dr. Henderson litigation within (7) days of the docketing of this ruling.

The parties shall confer about the Balentine photos and the confidentiality agreement in accordance with the above ruling.

*CONCLUSION*

Defendants' motions to preclude expert testimony or to compel compliance [**doc. ## 53,55,57,59,61**] are **GRANTED** to the ex-

tent that they seek supplemental reports and additional time to depose expert witnesses; defendants' motion to compel [**doc. # 63**] is **GRANTED**; and plaintiff's motion to compel [**doc. # 69**] is

**GRANTED IN PART.**

This is not a recommended ruling. This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 6(a), 6(e) and 72(a); and Rule 2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.